In the Matter of the Estate of WILLIAM G. PHELPS, Deceased.

Surrogate's Court, Broome County, April 14, 1936.

*Hinman, Howard & Kattell* [*Thomas B. Kattell* of counsel], for the estate.

*Ralph L. Emmons, Seth T. Cole* and *Margaret Duncan,* for the State Tax Commission.

BAKER, S. Appeal is taken from the *pro forma* order of this court which included as property taxable by the State of New York decedent's interest in and to several parcels of real estate situate in Wilkes-Barre, Pa., conveyed by decedent and various other owners to the Wyoming National Bank of Wilkes-Barre, Pa., and John E. Sayre in trust, to handle, lease and sell the same, decedent's interest therein and under said trust agreement being an undivided one-fourth interest. The value of decedent's undivided one-fourth interest therein was fixed at $21,096.75. The ground of such appeal was that decedent's interest in such property was not legally taxable by the State of New York, but was taxable only by, and it had in fact been taxed by, the taxing authorities of Pennsylvania, and that the taxable situs of such property and decedent's interest therein was in Pennsylvania and not in New York.

Upon the bringing on of the appeal it was conceded: Subject to the objection by the attorney for the New York State Tax Commission that the evidence and fact is immaterial, it is conceded that the Commonwealth of Pennsylvania assessed an inheritance tax against decedent's interest in said property under said trust instrument on a valuation of $21,096.75 (as well as on 5468.36/ 25701.71 of the Phelps-Bennett trust), and that said tax was paid by the executors of William G. Phelps, deceased, on or about September 10, 1934.

Thereafter the State Tax Commission by objections in writing dated April 2, 1935, set forth:

" The State Tax Commission by the undersigned, its attorney, hereby objects to the consideration by the Surrogate on the above entitled appeal of the facts set forth in a stipulation between the parties hereto, dated March 23, 1935, to the effect that the Commonwealth of Pennsylvania assessed an inheritance tax against the decedent's interest in the property which is the subject of this appeal, as well as other property, and the further fact that such tax was paid by the above entitled estate on or about September 10, 1934, on the ground that such facts are incompetent, immaterial and irrelevant, and in general have no bearing whatever on the subject before the Court on this appeal; and in the event that this Court holds that such facts are material and relevant to the

determination of this appeal, it is respectfully requested that the State Tax Commission be given an exception in the record to such ruling.

"It is further desired to call attention of the Court to the facts set forth in the papers herein, that no appeal was taken to the Courts of the State of Pennsylvania, by the executors of the estate of the above named, from the determination of the taxing authorities of that State, and that therefore the matter of taxability by the State of Pennsylvania of the interest of the above named in the said property has not been determined by the Courts of Pennsylvania."

In determining the question involved in this appeal, the fact that the estate had paid to the Commonwealth of Pennsylvania an inheritance tax against decedent's interest in such property has been and is disregarded.

The trust indenture before the court, executed on or about January 12, 1930, is, in substance, as follows:

"This deed, made this 12th day of January, 1930, between William G. Phelps; Z. Bennett Phelps and Elizabeth D. Phelps, his wife; William D. Phelps and Jean Ross Phelps, his wife, by Charles B. Waller, their Attorney-in-Fact; Dallas W. Haines and Alice Phelps Haines, his wife; Charles B. Waller and Frances Phelps Waller, his wife; S. Phelps Platt and Penelope S. Platt, his wife; Charlotte Platt Lyman; Collier Platt and Louise Platt, his wife, being all of the heirs and devisees of Martha B. Phelps, deceased, parties of the first part, and The Wyoming National Bank of Wilkes-Barre, Pennsylvania, and John E. Sayre, parties of the second part; witnesseth:

"That in consideration of One Dollar ($1.00) in hand paid by the parties of the second part to the parties of the first part, the receipt of which is hereby acknowledged, the parties of the first part do hereby sell and convey unto the parties of the second part, all of the following described pieces or parcels of land, together with the improvements thereon: [Here follows the description by metes and bounds of four parcels of land, two of which are stated to be in the city of Wilkes-Barre, Luzerne county, Pa., and the other two in the borough of Laurel Run, county of Luzerne and State of Pennsylvania.]

"To Hold the Same in Trust, nevertheless, for the following purposes:

"1.

"To hold, maintain and lease any or all of said properties and after paying or providing all taxes, repairs and other proper charges in connection therewith, to distribute the proceeds to the parties

of the first part, their heirs or assigns, in the proportions hereinafter set forth.

"2.

" To sell all or any of said properties at such time or times and for such prices as the parties of the second part may deem proper and to distribute the proceeds, after deducting all proper charges, to the parties of the first part in the proportions hereinafter set forth. There shall be no liability on the purchaser or purchasers to see to the application of the purchase money.

"3.

" It is the purpose and intent of the parties of the first part that the properties hereby conveyed shall be sold and conveyed as soon as a fair price can be obtained for them or any of them. William G. Phelps, Z. Bennett Phelps and Charles B. Waller or their survivor or survivors shall constitute an advisory committee, and their opinion expressed in writing shall be deemed final insofar as the parties of the second part are concerned as to what is a ' fair ' price. Nothing contained in this paragraph shall limit the power or authority of the parties of the second part to sell and convey, granted by the second paragraph hereof, insofar as purchasers are concerned. In the event of the death, resignation or inability to act of all of the advisory committee the parties of the second part shall determine what is a fair price. In the event of the death, resignation or inability to act of any or all of the advisory committee, the survivor or survivors shall appoint a successor or successors, subject to the approval of The Wyoming National Bank of Wilkes-Barre, Pa.

" It is understood that an effort shall be made to sell the unproductive properties at as early a date as possible and before selling all of the productive properties.

"4.

" So long as John E. Sayre is a Trustee hereunder he shall conduct the collection and distribution of all rents, payment of taxes, repairs, etc.

"5.

" The distribution under this deed of trust shall be in the following proportions:

William G. Phelps, one-fourth.
Z. Bennett Phelps, one-fourth.
William D. Phelps, one-twelfth.
Alice P. Haines, one-twelfth.
Frances P. Waller, one-twelfth.
S. Phelps Platt, one-twelfth.

Charlotte P. Lyman, one-twelfth.

Collier Platt, one-twelfth."

(Here follows a warranty clause.)

The instrument was recorded on March 23, 1933 (after the death of William G. Phelps), in the office of the recorder of deeds of Luzerne county, Pa.

The name of the corporate trustee and the instrument shows specifically that it was located at Wilkes-Barre, Pa., and from statement of counsel it appears that the individual trustee resided and had his office in Wilkes-Barre, Pa., which is not questioned.

My conclusion is that the contention of the representatives of the estate is correct and that decedent's interest in said property is not taxable by the State of New York, but was subject to the imposition of an inheritance tax by the Commonwealth of Pennsylvania for the reasons and under the principles and authorities hereinafter stated and referred to.

Decedent's undivided interest in this land and improvements thereon was an equitable interest in real estate.

The property was conveyed to the trustees not merely and for the sole purpose of sale for any price the trustees might see fit to accept. They were also authorized to hold, maintain and lease it and, after deducting taxes, repairs and other charges, to account to the grantors, their heirs (not legal representatives) or assigns for their respective shares of the rents.

The trustees were to sell only when a " fair price " could be obtained for the property, and the grantors, through an advisory committee named by them in the trust instrument, reserved the right to determine whether a price which might be offered for the property was a " fair price." The decedent was one of such committee. They specifically provided that productive property should not be sold until the unproductive property should be sold.

The provisions, conditions and qualifications of the instrument above referred to preclude a holding that there was an equitable conversion of land into personal property.

Moreover, even if it were to be held that there was a mandatory direction to the trustees to sell without any qualification or condition, and that, therefore, there was for some purposes an equitable conversion, such doctrine would not be applicable and should not be invoked merely to subject the property to an estate tax. (*Heyman* v. *Viane*, 252 N. Y. 159, 166; *Matter of Swift*, 137 id. 77, 86; *McCurdy* v. *McCurdy*, 197 Mass. 248; 83 N. E. 881; 16 L. R. A. [N. S.] 329, at p. 331; *Matter of Sutton*, 3 App. Div. 208; affd., 149 N. Y. 618.)

After reviewing the authorities cited by the parties hereto and others, I think the commentator who wrote the annotations to *Matter of Paul* (78 A. L. R. at p. 799) accurately appraised them when he said: "Without commenting on its consistency, the net result of the holdings and implications of the decisions in New York may be summed up to the effect that (1) where the conversion is effected by will at the time of testator's death, the doctrine of equitable conversion will not be applied, either to subject the real property in a State other than the domicil of the owner to the inheritance tax of the State of the domicil, or to exempt from the inheritance tax of the situs the land of a nonresident; (2) where the conversion is effected by executory contract of sale before the death of the owner, the doctrine of equitable conversion (a) will not be applied to tax the land situated in another State, although owned by one domiciled in New York  *  *  *,  (b) but it will be applied to exempt from the tax land in New York of a nonresident."

Counsel for the Tax Commission urge that the decision of the surrogate in *Matter of Wharton* (N. Y. L. J. June 7, 1924, p. 962) is conclusive and controlling.

I do not so regard it. There the trustees had "complete control" over the property with power to sell and to mortgage; here the right of the trustees to sell was, as to the grantors, dependent on the advisory committee determining that an offered price was a fair price. That decision was made in 1924, since which time the trend of the late decisions is to the effect that taxation of transfers by death is an intensely practical matter and should not be governed by legal fiction, but upon actual facts.

The *Boshart* case, likewise relied on by counsel for the Tax Commission (*Matter of Boshart*, 188 App. Div. 788, affg. 107 Misc. 697), is distinguishable. There the instrument was a land contract, the parties being vendor and vendee, whose interests were opposed one to the other. Here the instrument is one where individuals constituted the parties of the second part their trustees or agents with fiduciary powers. The latter acting for and in the interests of the former had no interests conflicting with those of their principals. Furthermore, the principles relied on and the argument advanced by the surrogate who decided the *Boshart* case, serve to point out several distinctions and differences between the two cases. There the surrogate, in supporting the conclusion which he reached, said: "If the farm had been taken by eminent domain, the damages awarded would belong to the vendee, subject to the lien of the vendor."

In the instant case, however, if the Wilkes-Barre real property were to be taken by eminent domain, the damages would have to be accounted for and paid over to Mr. Phelps, or his estate, and his associates who created the trust, subject only to any compensation to which the trustees might be entitled. The trustees would have no real or substantial interest in the compensation awarded. Again he reasoned that " if the buildings on the farm had been destroyed by fire, the loss would have fallen on the vendees." Here, if the buildings on the Wilkes-Barre real estate had been destroyed by fire, the loss would not have fallen on the trustees but would have to be borne by Mr. Phelps (or his estate) and his associates. Another ground advanced by the surrogate in the *Boshart* case for his conclusion was: " The vendees may cut timber on the land and would not be liable for waste unless the security of the vendor is impaired." This would not have been permissible under the trust agreement before the court.

Other authorities cited on behalf of the Tax Commission have been carefully considered, but as I think they are not decisive they need not be discussed.

The appeal by the executors and trustees is sustained, the *pro forma* order fixing such tax is modified, and the interest of the decedent in said Wilkes-Barre real estate trust, so called, is held non-taxable.

A decree to be entered in conformity herewith.